UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MID-ATLANTIC REGION COMMISSION ON HIGHER EDUCATION d/b/a MIDDLE STATES COMMISSION ON HIGHER EDUCATION,

Petitioner,

-v-

ASA COLLEGE, INC.,

Respondent.

25 Civ. 8521 (JPC)

OPINION AND ORDER

JOHN P. CRONAN, United States District Judge:

This case is a follow-on to one the Court resolved last year, *ASA College, Inc. v. Mid-Atlantic Region Commission on Higher Education* ("*ASA I*"), No. 24 Civ. 2991 (JPC), 2025 WL 448407 (S.D.N.Y. Feb. 10, 2025). *ASA I* arose out of a dispute between Respondent ASA College, Inc. ("ASA"), a private educational institution, and its accreditor, Petitioner Mid-Atlantic Region Commission on Higher Education, which does business as the Middle States Commission on Higher Education (the "Commission"). *Id.* at *1. "In early 2023, [the Commission] terminated ASA's accreditation and then closed ASA's appeal of that determination after ASA represented that it was ceasing operations." *Id.* ASA initiated an arbitration proceeding to challenge the Commission's withdrawal of its accreditation (the "First Arbitration"). *Id.* at *3. The First Arbitration culminated in a final award in favor of the Commission (the "First Arbitral Award"), *id.*, which this Court confirmed in *ASA I*, *id.* at *9. While that case was pending, ASA filed a second arbitration involving the Commission's withdrawal of its accreditation (the "Second Arbitration"). *See id.* at *1, *9-10. An arbitrator dismissed the Second Arbitration, concluding

that ASA's claims were barred by the doctrine of *res judicata* (the "Second Arbitral Award"). Dkt. 1 ("Petition"), Exhs. C ("Final Award"), D ("Decision & Order").

In this action, the Commission seeks confirmation of the Second Arbitral Award. In opposition, ASA cross-moves for relief from the Court's judgment in *ASA I* pursuant to Federal Rule of Civil Procedure 60(b)(6) and, in the alternative, for vacatur of the Second Arbitral Award. For the reasons that follow, the Court denies both of ASA's motions and grants the Commission's petition and motion to confirm the Second Arbitral Award.

## I. Background

### A. Underlying Facts

The Court assumes the parties' familiarity with *ASA I* and sets forth its facts and procedural history only as relevant. ASA is a private college and the Commission is the agency responsible for overseeing its accreditation. *ASA I*, 2025 WL 448407, at *1. On November 11, 2022, the Commission sent ASA a Notification of Adverse Action, informing ASA of the Commission's intent to withdraw its accreditation. *Id.* at *2. ASA timely submitted a notice of appeal and the Commission scheduled an appeal hearing. *Id.* The Commission warned ASA that its "closure may . . . require forfeiture or the withdrawal of the appeal currently in process." *Id.* (citation modified). Nevertheless, on January 24, 2023, before the appeal hearing date, ASA—which had been facing financial trouble—informed the Commission that the current academic semester, which was scheduled to end on February 24, 2023, would be its last. *Id.* at *3. The Commission construed that information as a "notification of institutional closure" and terminated ASA's appeal. *Id.* (citation modified). ASA's accreditation ceased being effective on March 1, 2023, and the originally scheduled appeal hearing did not take place. *Id.*

ASA initiated the First Arbitration on February 23, 2023, pursuant to the parties' arbitration agreement, claiming that the Commission violated ASA's due process rights. *Id.* The arbitrator issued the First Arbitral Award on January 2, 2024. *Id.* On April 19, 2024, ASA petitioned this Court to vacate the First Arbitral Award and filed a motion to the same effect. *Id.* The Commission filed an opposition to ASA's motion, which the Court construed as a cross-motion to confirm the First Arbitral Award. *Id.* While those cross-motions were pending, ASA initiated the Second Arbitration. *Id.* at *4. The Commission then moved this Court for a preliminary injunction to enjoin ASA from pursuing the Second Arbitration on the ground that ASA's claims would be "precluded under the doctrine of *res judicata* if and when this Court enters judgment confirming the [First Arbitral Award]." *Id.* (citation modified). On February 10, 2025, the Court denied ASA's motion to vacate the First Arbitral Award, *id.* at *4-9, and granted the Commission's cross-motion to confirm it, *id.* at *9. The Court also denied the Commission's motion for a preliminary injunction reasoning that the parties' arbitration agreement channeled a merits-based defense like *res judicata* to the arbitrator in the Second Arbitration. *Id.* at *10.

**B. The Second Arbitration**

ASA commenced the Second Arbitration on approximately December 9, 2024, alleging that the Commission "breached contractual, common law and federal statutory and regulatory obligations in five ways":

> (1) [the Commission's] Staff Liaison failed to provide requested assistance to [ASA]; (2) [the Commission] took actions that resulted in [ASA] being retroactively placed on probation effective October 28, 2021 without providing [ASA] with adequate notice and a reasonable opportunity to cure; (3) [the Commission] made conclusory determinations either without input from [ASA] or without considering [ASA's] input; (4) [the Commission] failed to follow its own probation policy's substantive requirements, and (5) [the Commission] continues to take adverse actions against [ASA] arising out of the original unlawful probation and/or other non-specific allegations of noncompliance not meeting federal due process requirements.

Decision & Order at 11-12. The arbitration proceeded before retired United States Magistrate Judge Henry Pitman (the "Arbitrator"). *See id.* at 18. On April 11, 2025, the Commission moved to "dismiss the demand for arbitration on the ground that the claims are barred by the doctrine of *res judicata*." *Id.* at 1. The Arbitrator granted that motion and issued the Second Arbitral Award on September 17, 2025. *See id.* at 18; Final Award.

**C. Procedural History**

On October 15, 2025, the Commission petitioned this Court to confirm the Second Arbitral Award and filed a motion to the same effect. Dkts. 1, 5, 6. On December 8, 2025, ASA filed two cross-motions in opposition. First, it moved the Court for relief from judgment with respect to the Court's confirmation of the First Arbitral Award—which provided the basis for dismissing the Second Arbitration on the ground of *res judicata*—pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure. Dkt. 14-1 ("ASA Motion") at 1-22. Second, in the alternative, it moved the Court to vacate the Second Arbitral Award on the ground that the Arbitrator manifestly disregarded the law in applying *res judicata* to dismiss that proceeding. *Id.* at 22-27. On December 22, 2025, the Commission filed a brief in further support of its motion and in opposition to ASA's cross-motions. Dkt. 16 ("Commission Reply"). ASA replied in support of its cross-motions on January 12, 2026. Dkt. 19 ("ASA Reply").

**II. ASA's Motion for Relief from the Judgment Confirming the First Arbitral Award**

The Court begins with ASA's cross-motion for relief from the judgment confirming the First Arbitral Award under Rule 60(b)(6). *See* ASA Motion at 1-22; ASA Reply at 1-7.

**A. Legal Standard**

Federal Rule of Civil Procedure 60(b) allows a court to relieve a party from an order or judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). A motion seeking relief under Rule 60(b)(6) "must be based upon some reason other than those stated in clauses (1)-(5)," *United Airlines, Inc. v. Brien*, 588 F.3d 158, 175 (2d Cir. 2009) (citation modified), and requires a showing of "extraordinary circumstances" warranting relief, *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 59 (2d Cir. 2002).

Although certain language in Rule 60(b) is broad, its operation is narrow. "Rule 60(b) provides a mechanism for extraordinary judicial relief available only if the moving party demonstrates exceptional circumstances, and relief under the rule is discretionary." *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 126 (2d Cir. 2009) (citation modified). And in evaluating a motion under Rule 60(b), "the courts of this circuit also require that the evidence in support of the motion be highly convincing, that the movant show good cause for the failure to act sooner, and that no undue hardship be imposed on other parties as a result." *Crystal Waters Shipping Ltd. v. Sinotrans Ltd. Project Transp. Branch*, 633 F. Supp. 2d 37, 41 (S.D.N.Y. 2009) (citation modified). Relief under Rule 60(b), therefore, is generally disfavored and only sparingly granted. *See Flynn v. Nat'l Asset Mgmt. Agency*, 303 F.R.D. 448, 451 (S.D.N.Y. 2014).

**B. Discussion**

ASA's Rule 60(b) motion is an untimely ploy to defeat confirmation of the Second Arbitral Award.[1] The Second Arbitral Award is based on the preclusive effect of the First. *See* Decision & Order at 18. By seeking relief from the judgment confirming the First Arbitral Award, *see ASA I*, 2025 WL 448407, at *1, ASA attempts to hollow out the *res judicata* foundation on which the Second Arbitral Award stands. But ASA fails to show good cause for its delay in bringing this motion, so the Court denies it as untimely. *See Crystal Waters Shipping*, 633 F. Supp. 2d at 41 ("[T]he movant [must] show good cause for the failure to act sooner.").

A motion under Rule 60(b)(6) must be made "within a reasonable time." Fed. R. Civ. P. 60(c)(1). "In considering whether a Rule 60(b)(6) motion is timely, we must scrutinize the particular circumstances of the case, and balance the interest in finality with the reasons for delay." *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir. 1983). In *PRC Harris*, the Second Circuit faulted the plaintiff for delaying its Rule 60(b)(6) motion for nearly a year while the plaintiff "filed a second complaint, saw the case removed to a federal court, opposed a motion for summary judgment, and even proceeded to appeal . . . before it ultimately decided to return to" the original court seeking an amended judgment pursuant to Rule 60(b)(6). *Id.* That unreasonable delay made the court doubt that there were "extraordinary circumstances" warranting Rule 60(b)(6) relief. *Id.*; *see Brown v. Enzyme Dev.*, 380 F. App'x 97, 98 (2d Cir. 2010) (summary order) ("[E]xtraordinary circumstances warranting Rule 60(b)(6) relief typically do not exist where the applicant fails to move for relief promptly." (citation modified)).

[1] Because the Court finds ASA's motion untimely, it does not address the Commission's alternative argument that the motion is procedurally barred. *See* Commission Reply at 2-3.

ASA's sole reason for delay is unavailing. ASA contends that it could not have known that it needed relief from the judgment confirming the First Arbitral Award until the Second Arbitration was resolved on *res judicata* grounds. ASA Motion at 20. That rationale is belied by the procedural history of both *ASA I* and this action. ASA knew that the Commission would assert a *res judicata* defense based on *ASA I* even before this Court entered judgment confirming the First Arbitral Award. Nearly two months prior, the Commission had moved for a preliminary injunction to stay the Second Arbitration because, it argued, ASA's second bite at arbitration would be "precluded . . . under the doctrine of *res judicata* if and when this Court enters judgment confirming the [First Arbitral Award]." *ASA I*, 2025 WL 448407, at *4; *see id.* at *9 (quoting the Commission's motion for a preliminary injunction referring to its "anticipated preclusion defense in the Second Arbitration" (citation modified)). But ASA did not seek Rule 60(b) relief after the Court confirmed the First Arbitral Award. Nor did ASA seek such relief at any point during the Second Arbitration, where *ASA I*'s preclusive effect was the central issue. *See* Decision & Order at 1 (stating that the Commission filed its motion to dismiss based on *res judicata* on April 11, 2025). Only after ASA obtained an unfavorable result in the Second Arbitration did it ask this Court for a mulligan. Like the *PRC Harris* plaintiff, ASA does not offer any justification for this delay, so its last-ditch do-over request falls far short of the "extraordinary circumstances" required for relief under Rule 60(b)(6). *PRC Harris*, 700 F.2d at 897 (citation modified); *see Kotlicky v. U.S. Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987) (requiring good cause for a party's "failure to act sooner"); *accord Crystal Waters Shipping*, 633 F. Supp. 2d at 41.

Accordingly, the Court denies ASA's Rule 60(b)(6) motion for relief from the judgment in *ASA I*.

## III. Cross-Motions Concerning the Second Arbitral Award

### A. Legal Standard

When reviewing an arbitration award under the Federal Arbitration Act ("FAA"), 9 U.S.C § 1 *et seq.*, a court "can confirm and/or vacate the award, either in whole or in part." *Scandinavian Reins. Co. Ltd. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (citation modified). "[A]rbitral awards and the arbitral process" deserve "strong deference." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007).

"Under the FAA, courts may vacate an arbitrator's decision only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (citation modified). The FAA sets out four explicit grounds to vacate an arbitration award: (1) "the award was procured by corruption, fraud, or undue means," (2) the arbitrators showed "evident partiality or corruption," (3) "the arbitrators were guilty of misconduct" that prejudiced "the rights of any party," or (4) "the arbitrators exceeded their powers." 9 U.S.C. § 10(a). Besides these four explicit bases, the Second Circuit has put a "judicial gloss on the specific grounds for vacatur of arbitration awards" in the FAA and recognized that a "court may set aside an arbitration award if it was rendered in manifest disregard of the law." *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011) (citation modified); *accord Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021).

These stringent standards erect a "high hurdle" for vacating an arbitration award. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). A petition to vacate an arbitration award is "not an occasion for *de novo* review of an arbitral award." *Scandinavian Reins. Co.*, 668 F.3d at 71 (citation modified). Instead, the review is "severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Id.* at 71-72 (citation modified).

**B. The Court Denies ASA's Motion to Vacate the Second Arbitral Award.**

The Court begins with ASA's motion to vacate the Second Arbitral Award. ASA argues that the Arbitrator manifestly disregarded that federal law entitles educational institutions to an "initial" arbitration prior to any other legal action when its accreditor takes a "final adverse action." ASA Motion at 23-24. In ASA's view, the First Arbitration was such an "initial" arbitration, was not binding, and therefore could not have had preclusive effect. *Id.* at 24.

The Court's review "under the doctrine of manifest disregard is severely limited." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003) (citation modified). "Vacatur of an arbitration award on this ground requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrator[] to understand or apply the law.'" *ASA I*, 2025 WL 448407, at *5 (quoting *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 208 (2d Cir. 2002)). So long as the arbitrator provides "a *barely colorable justification* for the outcome," a reviewing court is compelled to enforce an arbitration award despite any disagreement with the arbitrator on the merits. *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010).

Under this exacting standard, a party "seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden, as awards are vacated on grounds of manifest disregard only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *Seneca Nation of Indians*, 988 F.3d at 625-26 (citation modified). Accordingly, "to succeed in challenging an award under the manifest disregard standard," the challenger must show "that the arbitrator[] knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Id.* at 626 (citation modified). "In

addition to this 'subjective component,' a finding of manifest disregard requires an objective determination that the disregarded legal principle was 'well defined, explicit, and clearly applicable.'" *Id.* (quoting *Westerbeke Corp.*, 304 F.3d at 209).

**1. The Arbitrator's Decision**

Before addressing ASA's arguments for vacatur, the Court describes how the Arbitrator reached his conclusion. He began by reciting the standard for *res judicata* under New York law:

> Res judicata, also known as claim preclusion, precludes a party from litigating "a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter." *Josey v. Goord*, 9 N.Y.3d 386, 389 (2007) (citation omitted). The doctrine "applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation." *In re Hunter*, 4 N.Y.3d 260, 269 (2005). In order to "ensure finality, prevent vexatious litigation and promote judicial economy," New York courts have long applied a "transactional analysis approach" to determine whether res judicata bars a party's claim: "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111 (2021) (cleaned up).

Decision & Order at 12 (quoting *Chalpin Realty SC, LLC v. Marcus & Millichap Real Est. Inv. Servs., Inc.*, No. 24 Civ. 4105 (VEC), 2025 WL 588029, at *3 (S.D.N.Y. Feb. 24, 2025), *aff'd*, No. 25-669, 2026 WL 290460 (2d Cir. Feb. 4, 2026) (summary order)). Noting that a "judgment entered upon an arbitration award is *res judicata* of all matters reasonably comprehended in the dispute submitted to the arbitrators," *see id.* at 13 n.3 (citation modified), the Arbitrator set out the three-part test for evaluating whether claims arise out of the same transaction or series of transactions: "(1) whether the claims turn on facts related in time, space, origin, or motivation; (2) whether the claims form a convenient trial unit; and (3) whether the treatment of the claims as a unit conforms to the parties' expectations or business understanding or usage," *id.* at 13 (quoting *Chalpin Realty SC*, 2025 WL 588029, at *3 (citation modified)).

The Arbitrator concluded that ASA's claims in the Second Arbitration are barred because ASA knew of them at the time of the First Arbitration, those claims arose out of the "same series of transactions" as the First Arbitration, "the Arbitrator in the First Arbitration heard and considered evidence and the law relevant to" them, and "there was no procedural obstacle to . . . asserting those claims in the First Arbitration." *Id.* at 17-18. In reaching this outcome, the Arbitrator considered the three factors for evaluating whether the claims arose out of the same transaction or series of transactions. With respect to the first factor, the Arbitrator rejected ASA's "attempts to draw a line between the events occurring before and after November 11, 2022"—when the Commission sent ASA a Notification of Adverse Action, *ASA I*, 2025 WL 448407, at *2—noting that both the First Arbitration's arbitrator and this Court "made extensive detailed findings concerning the parties' relationship going back as far as 2018," thus indicating that "events occurring before November 2022 are related in origin and motivation" to those that took place after. Decision & Order at 14. Next, the Arbitrator stated that the claims before him "form a convenient trial unit" with those in the First Arbitration. *Id.* Third, the Arbitrator concluded that "addressing all claims concerning events before and after November 11, 2022 conforms to the expectations of reasonable parties and common usage," because the First and Second Arbitrations involved the same multi-factor due-process test, and "a reasonable party would expect that all alleged deficiencies with respect to those factors would be asserted in the same action." *Id.* at 15 (citing the multi-factor test from *Sojourner-Douglass College v. Middle States Association of Colleges & Schools*, No. Civ. A. ELH-15-01926, 2015 WL 5091994, at *6 (D. Md. Aug. 27, 2015)). Based on this analysis, the Arbitrator concluded that the First Arbitration was *res judicata* of the Second.

The Arbitrator then explained why ASA's two arguments to the contrary were unpersuasive. First, ASA contended that the First Arbitration involved a stipulation to limit the issues, meaning the claims raised in the Second were previously unavailable to ASA. *Id.* The Arbitrator concluded that this misstated the record—in actuality, ASA chose to narrow the scope of its claims and forgiving that choice "would effectively abolish the doctrine of *res judicata*." *Id.* at 16. Second, ASA stated that it was barred from raising "claims other than the dismissal of its appeal in the First Arbitration" by the parties' arbitration agreement, which restricted the claims that could be brought when challenging a "Final Adverse Action." *Id.* The Arbitrator concluded that ASA relied on a mistaken premise: the First Arbitration "was not a challenge to a 'Final Adverse Action'" because it did not involve a challenge to a Commission action "at the conclusion of any appeals process available to [ASA] under [the Commission's] policies and procedures (*based on a federal definition found in 34 CFR § 602.3*)." *Id.* at 17 (emphasis in Decision & Order; citation modified); *see also id.* at 17 n.4 (noting that this Court reached the same conclusion in *ASA I*, 2025 WL 448407, at *4 n.4). So "nothing in the arbitration agreement restricted [ASA's] ability to assert all of its claims in the First Arbitration." *Id.* at 17.

**2. ASA's Arguments**

ASA's manifest-disregard argument boils down to its contention that the Arbitrator "wholly ignored" that federal law requires accreditors to engage in an "initial," non-binding arbitration when there is a "dispute involving the final denial, withdrawal, or termination of accreditation." ASA Motion at 24; *see id.* at 9 (quoting 20 U.S.C. § 1099b(e)). ASA contends that the Commission's dismissal of its appeal was a "final" adverse action, that it was therefore entitled to an "initial" arbitration, the First Arbitration was that initial proceeding, and the First Arbitration therefore could not have had preclusive effect. *Id.* at 12; *see id.* at 23-24.

Far from "willfully flout[ing] the governing law," *Seneca Nation of Indians*, 988 F.3d at 626 (citation modified), the Arbitrator expressly rejected ASA's line of reasoning. After reviewing the parties' arbitration agreement, the Arbitrator concluded that the First Arbitration did *not* involve a final adverse action. *See* Decision and Order at 16-17. As the Arbitrator explained, under the parties' agreement, a "Final Adverse Action" is "'[a] final determination by [the Commission] regarding an adverse action taken against an accredited or candidate institution at the conclusion of any appeals process available to the institution under [the Commission's] policies and procedures (*based on a federal definition found in 34 CFR § 602.3*)' (emphasis added)." *Id.* at 17 (citation modified). Because the Commission's dismissal of ASA's appeal was not a determination made at the end of the appeals process, it was not a "Final Adverse Action." *Id.* Indeed, this Court arrived at the same conclusion in *ASA I*. 2025 WL 448407, at *4 n.4. Thus, federal law concerning final adverse actions was immaterial to the Arbitrator's *res judicata* analysis, and the Arbitrator accordingly did not ignore any "clearly applicable" law. *Seneca Nation of Indians*, 988 F.3d at 626 (quoting *Westerbeke Corp.*, 304 F.3d at 209). The Court therefore denies ASA's motion to vacate the Award.

### C. The Court Grants the Commission's Motion to Confirm the Second Arbitral Award.

Having denied ASA's request to vacate the Second Arbitral Award, the Court turns to the Commission's request to confirm that award under Section 9 of the FAA. 9 U.S.C. § 9. There is no evidence in the record that the award was procured by corruption, fraud, or undue means; that the Arbitrator was partial or corrupt; that the Arbitrator was guilty of any misbehavior prejudicing the rights of any party; that the Arbitrator exceeded or imperfectly executed his power; or that there was a manifest disregard of the law, as discussed above. The Court therefore grants the Commission's petition to confirm the Second Arbitral Award.

## IV. Conclusion

For these reasons, the Court denies ASA's motion for relief from the judgment confirming the First Arbitral Award and its motion to vacate the Second Arbitral Award, and grants the Commission's petition to confirm the Second Arbitral Award. The Clerk of Court is respectfully directed to enter judgment in favor of the Commission and to close this case.

SO ORDERED.

Dated: August 12, 2026
New York, New York

JOHN P. CRONAN
United States District Judge